PAPPAS et al., Appellants,

v.

IPPOLITO et al., Appellees.

[Cite as *Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89903.

Decided Aug. 7, 2008.

626

628

630

Timothy A. Shimko & Associates and Timothy A. Shimko, for appellants.

Reminger & Reminger Co., L.P.A., Clifford C. Masch, and Brian D. Sullivan, for appellees Kenneth Ippolito, Richmond Towers, L.L.C., and Richmond Hills Apartments, L.L.C.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers; and Ciano & Goldwasser, L.L.P., and Andrew S. Goldwasser, for appellee Debbie Piunno.

ANTHONY O. CALABRESE JR., Presiding Judge.

{¶ 1} Plaintiffs-appellants George E. Pappas and 25400 Euclid Avenue, L.L.C., appeal from a summary judgment rendered in favor of defendants-appellees Debbie Piunno and Kenneth Ippolito on appellants' claims for breach of contract, fraud, conversion, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. Appellants assign four errors for review, challenging the trial court's granting of summary judgment and the court's earlier orders limiting discovery and striking evidence from the record. For the reasons stated below, we affirm.

{¶ 2} This case concerns a commercial real estate transaction. On June 10, 2002, appellants agreed to purchase the Richmond Towers apartment building in the city of Euclid from its owner, Ippolito, for $4,150,000. The transaction was completed on November 19, 2002, and shortly thereafter, appellants took possession of the property.

{¶ 3} Appellants allege that immediately after taking possession, they discovered that the tenant lists and rent rolls provided by Ippolito as part of the prepurchase negotiations contained false information, resulting in more than $15,000 per month less in monthly income than that represented by Ippolito.

Additionally, appellants allege that the physical condition of the building had been grossly misrepresented and that at least 20 of the 126 units required substantial refurbishing at a cost of $44,000. On March 24, 2003, appellants filed suit for money damages against Ippolito and Piunno, the Richmond Towers property manager who was responsible for receiving and recording the rent receipts for Ippolito. Appellants alleged that Piunno assisted Ippolito with falsifying the rent rolls.

{¶ 4} On April 25, 2007, the trial court granted summary judgment in favor of appellees on all but one claim. Appellants then dismissed the remaining claim without prejudice and filed this appeal. We will review appellants' assignments of error out of order so as to review the evidentiary issues first.

I

{¶ 5} In appellants' third assignment of error, they argue that "the trial court committed prejudicial error when it entered rulings striking evidence and testimony offered by Plaintiffs/Appellants."

{¶ 6} Ippolito filed his motion for summary judgment on March 1, 2005. Appellants, with leave of court, filed their opposition brief on April 15, 2005. In support of their opposition to summary judgment, appellants appended 20 exhibits to their brief. These exhibits comprised documents, pages of transcripts from depositions, and affidavits of witnesses.

{¶ 7} On April 29, 2005, Ippolito filed six motions to strike, asking the court to strike from the record five of the affidavits and one of the exhibits. The exhibit, Exhibit XIII, was an unauthenticated letter purportedly written by Joseph Franzese, an architect with Omni Associates, Inc., the firm hired by Pappas to inspect the property, which referred to problems relating to the inspection of apartments prior to the closing.

{¶ 8} On May 2, 2005, Ippolito filed his reply brief, in which he argued that appellants' opposition was not supported by admissible evidence, referring to the six motions to strike filed previously. On May 9, 2005, appellants filed a notice with the court stating that they were filing Joseph Franzese's affidavit authenticating Exhibit XIII.

{¶ 9} Between October 18, 2005, and February 21, 2006, the trial court issued numerous rulings, resulting in certain parts of appellants' supporting evidence being stricken from the record. These rulings included an order on October 18, 2005, striking the Franzese affidavit and another on February 6, 2006, striking Exhibit XIII.

{¶ 10} On February 21, 2006, the trial court issued its ruling on the admissibility of statements contained in the affidavits of William Pappas, George Pappas,

Steven Asbury, and George Oulas. Asbury and Oulas, two of Pappas' witnesses, were investors with Pappas in the purchase of Richmond Towers. After the sale, Oulas was involved with the property maintenance and Asbury with the property management. The court's ruling found certain statements or parts of these witnesses' affidavits inadmissible. On March 23, 2007, the trial court supplemented its earlier entry and ruled on the admissibility of the remaining affidavit statements it had failed to consider in the February 21, 2006 order.

{¶ 11} Appellants argue that the trial court abused its discretion in making these rulings and striking certain evidence. Appellants assert that the trial court struck evidence on highly relevant topics without any basis in fact or law for doing so. Appellants also claim that the court based its rulings on the Franzese affidavit and Exhibit XIII on a procedural rule "made up by the trial judge." We disagree.

{¶ 12} A review of the record demonstrates that the trial court scrupulously adhered to the rules of civil procedure regarding the motions for summary judgment and appellants' opposition filed in this matter. Civ.R. 56(C) provides:

{¶ 13} "The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, *timely filed in the action*, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." (Emphasis added.)

{¶ 14} Civ.R. 56(E) provides:

{¶ 15} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit."

{¶ 16} Pursuant to this rule, the trial court could refuse to consider appellants' Exhibit XIII as evidence for two reasons. First, the letter was not a certified copy, nor was it accompanied by an affidavit attesting to its authenticity; thus, it could not properly be considered under Civ.R. 56(E). Second, to the extent that appellants attempted to correct this error by filing an authenticating affidavit on May 9, 2005, that affidavit was filed out of rule and without leave of court. The affidavit should not have been considered by the trial court absent a showing of excusable neglect which would have justified an extension of time to respond to appellees' motion for summary judgment. See Civ.R. 6(B)(2); *Miller*

*v. Lint* (1980), 62 Ohio St.2d 209, 16 O.O.3d 244, 404 N.E.2d 752; *Farmers & Merchants State & Sav. Bank v. Raymond G. Barr Ents., Inc.* (1982), 6 Ohio App.3d 43, 6 OBR 153, 452 N.E.2d 521.

{¶ 17} However, in its March 23, 2007 entry, the court clarified its earlier rulings on Exhibit XIII and stated: "The Court now clarifies that as originally filed, exhibit 13 to the Plaintiffs' brief in opposition to summary judgment cannot be considered on summary judgment; as refiled, it can be." Therefore, since the court decided that it could consider Exhibit XIII as part of appellants' opposition to appellees' motion for summary judgment, appellants' argument on this issue is moot.

{¶ 18} Appellants also contest the trial court's orders striking portions of the affidavits of George Oulas, George Pappas, William Pappas, and Steven Asbury filed with appellants' brief in opposition to summary judgment.

{¶ 19} The decision whether to admit or exclude evidence is subject to review under an abuse-of-discretion standard, and absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, we will not disturb an evidentiary ruling. See *State v. Lyles* (1989), 42 Ohio St.3d 98, 99, 537 N.E.2d 221; *Weiner, Orkin, Abbate & Suit Co., L.P.A. v. Nutter* (1992), 84 Ohio App.3d 582, 589, 617 N.E.2d 756. An abuse of discretion connotes more than an error in law or judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.

{¶ 20} In this case, the trial court conducted a thorough analysis of each of the statements subject to being stricken. The court struck statements, or parts of statements, that it found were not made upon personal knowledge, were not statements of fact but rather stated legal or other conclusions, and those it found simply made no sense. In making its determination whether to admit or exclude statements, the court followed the dictates of Civ.R. 56 and the Ohio Rules of Evidence. Accordingly, we find that the trial court did not abuse its discretion in refusing to admit certain evidence included as part of appellants' opposition to summary judgment.

{¶ 21} Appellants' third assignment of error is overruled.

## II

{¶ 22} In appellants' fourth assignment of error, they argue that "the trial court committed prejudicial error when it precluded Plaintiffs/Appellants from

taking depositions that would have developed facts supporting Appellants' allegations."

{¶ 23} It is well established that a trial court enjoys considerable discretion in the regulation of discovery proceedings. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659; *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. Therefore, we will not reverse the judgment of the trial court on claimed errors in the discovery process absent a showing of a clear abuse of discretion.

{¶ 24} Appellants assert that the trial court abused its discretion when it issued a protective order preventing them from taking the depositions of Mike Ippolito, Richard Murphy, and Michael Murphy. They claim that the depositions would have developed evidence that Ippolito had engaged in a habit and routine practice of defrauding buyers in real estate transactions by inflating rent rolls and concealing defects in his properties. Appellants contend that such evidence is relevant and would have been admissible under Evid.R. 404(B) and 406. We disagree.

{¶ 25} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 26} Evid.R. 406 provides: "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

{¶ 27} As this court has explained in the past, "The rationale for the admission of evidence pursuant to Evid.R. 406 is that habitual acts may become semi-automatic and may tend to prove one acted in the particular case in the same manner. However, the evidence must actually rise to the level of a habit or the use of Evid.R. 406 would defeat the purpose of Evid.R. 404(B) which prohibits the admission of evidence of other acts to show that someone acted in conformity with those acts in the instant case." *Cardinal v. Family Foot Care Ctrs., Inc.* (1987), 40 Ohio App.3d 181, 532 N.E.2d 162, paragraph two of the syllabus.

{¶ 28} "Evidence of habit requires a showing that the person to whom the habit is attributed performs a repeating act, either involuntarily or so consistently that the probabilities are such that in the absence of direct evidence to the contrary, the trier of fact may infer that the character of the person is such that the act actually occurred as it has so often in the past." *State v. Gaines,*

Cuyahoga App. No. 82301, 2003-Ohio-6855, 2003 WL 22966190, ¶ 28. Examples of habitual acts are locking the door of a house or traveling home from work by the same route every day. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 133.

{¶ 29} Appellants' reliance on this court's decision in *Gonzalez v. Spofford*, Cuyahoga App. No. 85231, 2005-Ohio-3415, 2005 WL 1541016, is misplaced. In that case, the plaintiff offered substantial evidence to demonstrate that it was a car dealer's customary practice to deceive his customers. That evidence included records of a prior conviction for tampering with records, numerous consumer complaints filed with the state attorney general's office, and records of other consumer violations. Additionally, the court noted there was no prejudice from the admission of the contested records because the dealer himself testified that his "temporary tag" privileges had been revoked due to the more than 60 violations of his dealer's license, his dealer's license had been suspended twice by the Bureau of Motor Vehicles, numerous complaints were filed against him with the Ohio Attorney General's Consumer Protection Section, and he had been sued 32 times in the common pleas court, thus establishing independent evidence of these violations.

{¶ 30} We do not find that the trial court abused its discretion in granting appellees' protective order. Appellants have failed to demonstrate how the proposed testimony of Mike Ippolito, Richard Murphy, and Michael Murphy, regarding past unrelated commercial dealings, is relevant to this action. Neither have appellants demonstrated that the proposed testimony of the three witnesses can rise to the level of "habit" to satisfy the requirements of Evid.R. 406. Appellants are seeking to use evidence of past allegations of fraud to prove their present allegation of fraud. This is precisely the sort of prejudicial evidence prohibited by Evid.R. 404(B).

{¶ 31} Appellants' fourth assignment of error is overruled.

### III

{¶ 32} In appellants' second assignment of error, they argue that "the trial court erred when it granted Defendant Ippolito's Motion for Summary Judgment."

{¶ 33} Appellants assert that the trial court erred in granting summary judgment in favor of Ippolito on the claims of fraud, conversion, breach of contract, promissory estoppel, civil conspiracy, and breach of the implied covenant of good faith and fair dealing.

{¶ 34} We review an appeal of the granting of summary judgment under a de novo standard of review. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether

summary judgment is appropriate. Additionally, we recognize that for purposes of deciding a motion for summary judgment, it is not the duty of this court, or the trial court, to weigh the evidence or to resolve issues of credibility. *Stimmel v. Cleveland* (Feb. 19, 1983), Cuyahoga App. No. 44899, 1983 WL 5791.

{¶ 35} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 36} The party moving for summary judgment on the ground that the nonmoving party cannot prove its case bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. The moving party must specifically point to evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support its claims. Id.

{¶ 37} Once the moving party has met its initial burden, the nonmoving party must produce competent evidence establishing the existence of a genuine issue for trial. Id. at 293, 662 N.E.2d 264. The nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027. When determining what is a "genuine issue," the court decides whether the evidence presents a sufficient disagreement between the parties' positions. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123.

{¶ 38} In reviewing a grant of summary judgment, we are mindful of the Ohio Supreme Court's admonition that "[s]ummary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion." *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

## FRAUD

{¶ 39} Appellants asserted in their complaint that Ippolito fraudulently misrepresented the condition of the apartment units and deliberately overstated the

amount of revenue being generated by the property by falsifying the rent rolls upon which appellants relied.[1]

{¶ 40} "A claim of common-law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076.

{¶ 41} Appellees moved for summary judgment on fraudulent misrepresentation of the condition of the apartment units, arguing that the doctrine of caveat emptor applied. They further argued that based on the "as is" clauses in the contract, appellants could not establish justifiable reliance on any representation made by appellees or their agents. They also noted that appellants should not have relied upon any alleged representations made about the property's condition, since appellants employed Capstone Realty Advisors and Omni Associates, two professional firms, to inspect the property.

{¶ 42} Appellants opposed summary judgment and argued that caveat emptor did not apply because Ippolito intentionally limited their inspection of the building to 14 units and fraudulently misrepresented that the condition of the 14 units was representative of all of the units. As evidence in support of their opposition, appellants attached to their brief a letter that Joseph Franzese sent to Harry Giallourakis of Capstone Realty Advisors, stating that Ippolito refused to allow William Pappas access to the property for the inspection and also that Ippolito limited the number of units that Franzese would be allowed to inspect. Appellants also attached excerpts of deposition testimony from Ippolito's broker, Gary Cooper, who said that Ippolito chose the units to be viewed and that based upon Ippolito's representations to him, he represented to appellants that the condition of those 14 units was comparable to the condition of all of the units in the building.

{¶ 43} "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition

---

**1.** Appellants also alleged in their complaint that Ippolito failed to disclose a $4,100 assessment by the city of Euclid. However, appellants do not raise this allegation as error on appeal. Pursuant to App.R. 12 and 16, we will not review the court's granting summary judgment to Ippolito on this issue.

complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus.

{¶ 44} The trial court did not err in granting appellees summary judgment on this issue. The express language of the purchase agreement places the contractual burden on appellants to inspect and approve the "as is" condition of the property and grants them the right to terminate the contract if an unacceptable condition is discovered. The agreement further provides, "Buyer agrees and acknowledges that Buyer has not relied upon any representation of Agent in connection with Buyer's Purchase of the Property." Even viewing the evidence most strongly in appellants' favor, as we must, we do not find that there exists a triable issue of material fact on appellants' claim that appellees fraudulently misrepresented the condition of the apartment units.

{¶ 45} As to the allegations of fraud relating to the rent rolls, we find that appellants fail to present evidence as to the inaccuracy of the information at the time the representations were made and fail to present evidence of justifiable reliance. The rent roll that Ippolito prepared on September 20, 2002, represents that the total monthly rent for all units was $64,570. Appellants claim, however, that when they began collecting rent after taking possession of the property on November 19, 2002, they collected between $15,000 and $20,000 less per month than what Ippolito had represented. A careful review of the record shows that the rent roll lists 126 separate units, each with a "monthly amount" and a "renewal date." It is apparent at a glance that 42 of the 126 units were marked with a double asterisk because their lease-renewal dates had expired or were about to expire. We find nothing false about this representation, and appellants offered no evidence to show that Ippolito flagged expired or nearly expired leases with the intent to mislead appellants into relying on that representation. Furthermore, the real estate sales contract between the parties states that the buyer must approve the rent rolls. This clause, coupled with the patent disclosure of expired leases, makes it unreasonable for appellants to assume that they would collect $64,570 monthly in rent, without inquiring further into the financial situation.

{¶ 46} The court did not err in granting summary judgment to Ippolito on appellants' fraud claim.

## CONVERSION

{¶ 47} In *Tabar v. Charlie's Towing Serv., Inc.* (1994), 97 Ohio App.3d 423, 427–428, 646 N.E.2d 1132, we set forth the required elements for conversion as follows:

{¶ 48} "Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. The measure of damages in a conversion action is the value of the converted property at the time it was converted." (Citations omitted.)

{¶ 49} In their complaint, appellants alleged that Ippolito misappropriated an $8,000 payment check from Cleveland Metropolitan Housing Authority ("CMHA") in December 2002. Ippolito moved for summary judgment on this claim, arguing that appellants failed to prove the elements of conversion. The trial court rightly pointed out that at this point in the litigation, appellants do not have to *prove* anything. As the party moving for summary judgment, Ippolito carries the initial burden of setting forth specific facts that demonstrate his entitlement to summary judgment. *Dresher*, supra, 75 Ohio St.3d 280, 662 N.E.2d 264. Ippolito did this by denying the allegation of conversion and pointing out that appellants had no evidentiary support for their allegation, other than their own testimony that they heard a rumor about the CMHA check.

{¶ 50} Pursuant to *Dresher*, supra, and Civ.R. 56, the burden then shifts back to appellants to establish a genuine issue of material fact for trial. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).

{¶ 51} In the instant case, we agree with the trial court's analysis that appellants' "sworn answers in their depositions amounted to mere repetition of the allegations of the complaint." Appellants failed to produce evidence that the check existed, let alone that Ippolito kept it when he should have turned it over to appellants. Therefore, the court did not err when it granted summary judgment on appellants' conversion claim.

## BREACH OF CONTRACT

{¶ 52} Appellants argue on appeal that Ippolito breached the parties' contract relating to the failure to disclose accurate rental income information and the apartments' physical condition. Appellants note that they make this argument as an alternative to their fraud claim. Having found that there are no genuine

issues of material fact regarding these claims under a fraud theory, we also find that these allegations do not rise to the level of a "breach" by Ippolito. The court properly awarded Ippolito summary judgment on appellants' breach-of-contract claim.

## PROMISSORY ESTOPPEL

{¶ 53} Count four of appellants' complaint states that appellees generally made promises and assurances to appellants and should be estopped from denying those promises and assurances. Appellants pleaded this claim as an alternative theory of recovery in addition to the breach-of-contract and fraud claims. In opposing summary judgment on this issue, appellants cite Ippolito's signature on the rent rolls as promising that the figures contained within were accurate. Appellants claim that they reasonably and foreseeably relied upon this promise to their detriment. As noted above, appellants supported their opposition to summary judgment with Civ.R. 56(C) evidence.

{¶ 54} "The doctrine of promissory estoppel is equitable in origin and nature and arose to provide a remedy through the enforcement of a gratuitous promise." *Hortman v. Miamisburg,* 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 24. "Promissory estoppel has been defined by the Restatement of Contracts, 2d as '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" Id., ¶ 23, quoting Restatement of the Law 2d, Contracts (1981) 242, Section 90.

{¶ 55} "The elements of a claim for promissory estoppel are as follows: (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Rucker v. Everen Secs.,* Cuyahoga App. No. 81540, 2003-Ohio-1166, 2003 WL 1090680, ¶ 24.

{¶ 56} Appellants failed to provide any evidence of an enforceable "promise," that is, an intention to do or refrain from doing something in the future. *Hortman,* supra, at 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 21–22. Because appellants' claim is not based upon an enforceable promise, but rather upon a misrepresentation of an existing or past fact, it fails to satisfy the first element of promissory estoppel, and appellees are entitled to judgment as a matter of law.

## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

{¶ 57} "Parties to a contract are bound toward one another by standards of good faith and fair dealing. However, this does not stand for the proposition that breach of good faith exists as a separate claim. Instead, good faith is part of a contract claim and does not stand alone." *Dawson v. Blockbuster, Inc.*, Cuyahoga App. No. 86451, 2006-Ohio-1240, 2006 WL 1061769, ¶ 35, citing *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 2004-Ohio-1661, 807 N.E.2d 953. Appellants' complaint states a claim for a breach of the implied covenant of good faith and fair dealing. Appellants acknowledge that Ohio law only recognizes an implied covenant of good faith and fair dealing in insurance contracts and in limited circumstances where the duty arises from the language of the contract. Appellants respectfully seek an extension of existing law. However, after reviewing the record of this case, we find no basis for extending the law and agree with the trial court that the language of the contract imposes no such duty. Summary judgment was properly granted to appellees on this claim.

### IV

{¶ 58} In appellants' final assignment of error, they argue that "the trial court erred when it granted Defendant Piunno's Motion for Summary Judgment."

{¶ 59} Appellants assert that the trial court erred in granting summary judgment in favor of Piunno on their claims of fraud and civil conspiracy. Additionally, appellants assert that the trial court erred in construing appellants' allegations that Piunno conspired with Ippolito to commit a fraud against them as stating a cause of action for aiding and abetting fraud rather than a claim for civil conspiracy. Before reviewing the grant of summary judgment, we must first determine whether appellants' complaint stated a claim for civil conspiracy.

{¶ 60} We note first that the concept of "notice pleading" employed by the Ohio Rules of Civil Procedure does not usually require any great degree of specificity; it requires only that notice be given as to the nature of the action. See *Mills v. Deehr*, Cuyahoga App. No. 82799, 2004-Ohio-2338, 2004 WL 1047720. Except for certain special matters set forth in Civ.R. 9, parties need only set out a short and plain statement showing that they are entitled to relief. Civ.R. 8(A). Fraud is one of the special matters set forth in Civ.R. 9 that must be stated with particularity; civil conspiracy is not.

{¶ 61} The elements of a civil-conspiracy claim include (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspira-

cy itself. *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 292, 629 N.E.2d 28.

{¶ 62} Even given a liberal interpretation of the notice-pleading requirements of Civ.R. 8, we cannot find that appellants' complaint stated a claim of civil conspiracy against Piunno. Appellants sought and were granted leave to amend their original complaint in order to add Piunno as a named defendant. The amended complaint named six "causes of action," the sixth being a cause of action for fraud against Piunno. Contained within that cause of action is an allegation that Piunno "conspired with and aided and abetted Defendant Ippolito in his scheme and efforts to falsely inflate the rent rolls and made affirmative representations in the rent rolls and also concealed facts in the rent rolls of which she had an obligation to truthfully disclose." These allegations, made within a claim alleging fraud, are insufficient to put Piunno on notice that in addition to the fraud claim, appellants were asserting a separate claim of civil conspiracy against her.

{¶ 63} As to the claim of fraud, we find that the trial court did not err in granting summary judgment to Piunno. The undisputed evidence in the record discloses that Piunno was employed by Ippolito as property manager of Richmond Towers. She was not a party to the contract. She had no part in the negotiations for the sale of the property. She did not act as a fiduciary. She did not sign or certify the disputed rent rolls. As an employee, Piunno worked under the direction and control of Ippolito. Ippolito signed and certified the rent rolls.

{¶ 64} Appellants admit that all of the representations material to the purchase of the property upon which they relied were made by Ippolito, not Piunno. Because the evidence affirmatively demonstrates that appellants cannot support a claim of fraud against Piunno, summary judgment on that claim was properly granted. Appellants' final assignment of error is overruled.

{¶ 65} In conclusion, the trial court did not abuse its discretion in ruling that various discovery issues were inadmissible, and the court did not err in granting summary judgment to Ippolito and Piunno on all claims before us.

Judgment affirmed.

MARY EILEEN KILBANE, J., concurs.

MELODY J. STEWART, J., concurs in part and dissents in part.

MELODY J. STEWART, Judge, concurring in part and dissenting in part.

{¶ 66} I concur with the majority decision on the discovery issues and also concur in part on the issue of summary judgment. I dissent, however, from the majority's finding that summary judgment was properly granted to Ippolito on all

of appellant's claims. Because there remain triable issues of fact on appellant's claims relating to the rent rolls, the Section 8 check, and the $4,100 Euclid assessment, the trial court erred in granting summary judgment against appellant on all of his claims.

{¶ 67} On the Euclid assessment claim, a review of Ippolito's motion for summary judgment shows that Ippolito never moved for summary judgment on that claim. In fact, Ippolito makes no mention of the assessment in his motion. Therefore, the trial court's granting of summary judgment on that issue is reversible error. Likewise, the trial court erred in granting judgment on the Section 8 check. Ippolito failed to set forth any facts demonstrating an entitlement to summary judgment on this issue other than a general denial of the claim and a broad assertion that appellant had no evidence. This is insufficient grounds for summary judgment under Civ.R. 56(C).

{¶ 68} Further review of the record finds that triable issues of material fact remain on appellants' claim that Ippolito misrepresented the value of the rent rolls. Appellants provided evidence showing that it is a standard in the industry for a buyer to rely upon the information in the rent rolls and that the rent rolls are supposed to accurately disclose what the rent receipts are. Appellant provided evidence that showed that he relied upon the rental-stream-of-income method of valuation in determining whether to purchase the property as an investment. He stated that he found the purchase price to be fair based upon the rental income figure of $64,570 per month provided by Ippolito. Appellants provided evidence that showed that the monthly rent roll income figure provided by Ippolito in October 2002 was approximately $16,000 higher than the actual monthly rent income received after appellants took possession of the building in November 2002, one month later.

{¶ 69} Even considering that the trial court struck much of appellants' evidence in opposition, when viewing the remaining evidence most strongly in appellants' favor, reasonable minds could reach more than one conclusion as to whether Ippolito misrepresented the actual amount of rental income from the property prior to the sale. Because questions of fact remain, Ippolito was not entitled to judgment as a matter of law, and the trial court erred in granting summary judgment to him on this issue.