**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0379n.06

No. 17-4006

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CAPITAL EQUITY GROUP, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jul 30, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| RIPKEN SPORTS INCORPORATED; SPORTS | ) | UNITED STATES DISTRICT |
| FIELDS INCORPORATED, d/b/a Sports Force; | ) | COURT FOR THE |
| SPORTS FORCE PARKS SANDUSKY LLC, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: SILER, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff appeals the district court's grant of defendants' motions to dismiss the complaint for failure to state a claim under Rule 12(b)(6) in this contract-dispute case. Because the complaint and attached contracts, read in the light most favorable to plaintiff, do not sufficiently allege claims for breach of contract or bad faith under Ohio law, we affirm.

I.

Plaintiff, Capital Equity Group, is an Ohio corporation that helps fund business-development projects. Defendants are a number of companies engaged in the business of developing, building, and running sports complexes. The parties joined together for the instant project, a planned youth baseball complex and sports park to be built in Sandusky, Ohio. Two different agreements define the relationship between the parties: the 2013 letter of intent ("2013

LOI") and the 2014 letter of intent ("2014 LOI"). The 2013 LOI provided Ripken Sports' and Capital Equity Group's "intent of a future partnership," noting that the parties "intend[ed] to work together to help develop a sports complex in Erie County, OH."

A little less than a year later, Capital Equity Group and Ripken Sports entered into the 2014 LOI. This 2014 LOI laid out the parties' rights and duties, including that "[Capital Equity Group] shall exclusively procure all equity participation into the development of the Project," that Ripken Sports would do market feasibility studies and be lead for design and construction, and that "the Parties agree[d] to reasonably cooperate with one another to facilitate each other's performance." It further provided that the term of the contract was "open-ended," but did not specify how profits were to be distributed or how to measure any party's performance. And it provided that it shall be "treated as a binding contract."

The parties operated pursuant to these agreements for approximately 19 months. Plaintiff's role was to obtain financing for the project. In furtherance of that aim, plaintiff "worked tirelessly to, among other things, consummate [the parties'] joint venture with Cedar Fair." This included "assist[ing] in structuring a Cooperative Agreement between Erie County, Ohio and a newly formed entity known as Cedar Point Park LLC."

The results were a success—"[a]s the direct and proximate result of [plaintiff]'s efforts, contacts and skill, a Cooperative Agreement for the Project was drafted and executed between Cedar Point Park LLC and Erie County." That agreement provided that Cedar Point Park LLC must deposit funds for the project totaling $1,500,000 "either directly or through the Design-Builder," meaning Ripken Sports. Additionally, the agreement required Cedar Point Park LLC— again, either "directly or through [Ripken Sports]"—to contribute a cumulative $2,000,000 for marketing over ten years. After Cedar Point Park LLC and the county entered into this agreement,

defendants ceased all communications with plaintiff. But defendants, Cedar Point Park LLC, and the county continued working together on the project, breaking ground on the sports complex in 2016.

Plaintiff filed in federal court a five-count complaint. In count I, plaintiff alleged that defendants jointly and severally breached the 2014 LOI, causing plaintiff approximately $4,000,000 in contract damages. In count II, plaintiff alleged that defendants violated the implied covenants of good faith and fair dealing found in Ohio Revised Code § 1301.304, again causing plaintiff approximately $4,000,000 in damages. Finally, in counts III–IV, plaintiff sought a preliminary injunction, appointment of a receiver, and action on accounting.

Defendants moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), which the district court granted. Plaintiff now appeals.[1]

II.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Giasson Aerospace Science, Inc. v. RCO Eng'g Inc.*, 872 F.3d 336, 338 (6th Cir. 2017). Under that rule, the district court may dismiss the plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We accept the truth of all of plaintiff's well-pleaded material allegations and only "affirm the district court's grant of the motion . . . if the moving party is entitled to judgment as a matter of law." *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial

---

[1]As is obvious from the 2013 LOI's prospective language relating to the parties' agreement, the district court held that the 2013 LOI did not constitute a binding contract between the parties. Plaintiff does not challenge this ruling on appeal, instead concentrating its contract arguments on the 2014 LOI.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). When, as in this case, a party attaches "a copy of a written instrument" to a complaint, the attachment becomes "a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and may be considered at the motion-to-dismiss stage. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

### III.

Plaintiff argues that the district court erred in dismissing its complaint because it properly alleged all necessary elements of a valid contract claim. Defendants present multiple arguments on which they claim we may affirm the district court. We need but one and, for the reasons that follow, hold that the district court properly dismissed plaintiff's complaint because the 2014 LOI lacked sufficiently definite terms of performance and remedy, and was thus unenforceable.

### A.

Under Ohio law, a breach of contract claim has four elements: (1) the formation of a binding contract or agreement; (2) the nonbreaching party performed its obligations under the contract; (3) the defendant failed to fulfill its obligations without a legally valid excuse; and (4) the nonbreaching party suffered damages. *Carbone v. Nueva Constr. Grp., L.L.C.*, 83 N.E.3d 375, 380 (Ohio Ct. App. 2017); *see also Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (same). But, as the district court noted, Ohio courts also require that contracts contain sufficiently definite terms—"[t]o be binding, a contract must be definite and certain." *In re Estate of Bohl*, 60 N.E.3d 511, 520 (Ohio Ct. App. 2016). Contracts in Ohio need not cover every possible issue or contingency, but its essential terms must be defined:

> While the parties need not agree on every conceivable circumstance that might arise in order for a contract to exist, they must agree on the contract's "essential terms." Thus, a valid contract must be specific as to its essential terms. In a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter. A person cannot be subject to a contractual obligation unless the character of the obligation is definitely fixed by the parties' express or implied agreement. An agreement is sufficiently certain for enforcement if it provides a basis for determining the existence of a breach and for giving an appropriate remedy.

*Id.* (citations omitted).

The 2014 LOI clearly sets out the parties and their general responsibilities. For example, it provides that plaintiff is exclusively responsible for procuring equity participation into the development of the project. Defendants, on the other hand, were responsible for both feasibility analysis and design and construction efforts. Thus, at first glance, the 2014 LOI does appear to provide the essential terms for a services contract—"the parties to the contract and its subject matter." *Id.* (citation omitted). But, as the district court correctly noted, the 2014 LOI provides absolutely no "basis . . . for giving an appropriate remedy." *Id.* (citation omitted). Nowhere within the agreement does it contemplate how any party would be compensated or how they would deal with a breach. Without any guidance on the parties' understanding of the value of plaintiff's services, this court is wholly unable to craft a remedy for plaintiff's breach of contract claim. Therefore, the district court correctly determined that the 2014 LOI did not constitute a valid contract under Ohio law.

Plaintiff attempts to counter this conclusion by looking to Ohio's Uniform Partnership Act. It claims that the 2014 LOI clearly established a legal partnership between the parties and, in Ohio, partnerships split all profits, losses, and expenses unless the partnership agreement establishes otherwise. *See* Ohio Rev. Code §§ 1776.03(A), 1776.41(B). This argument is specious at best. The complaint contains no allegations whatsoever that the parties operated as a legal partnership;

instead, it treats the 2014 LOI only as a contract between the parties. Plaintiff's argument is based upon the 2014 LOI's use of partnership-type language, which occurs only twice. The agreement provides that "[t]he parties will be *partners* with respect to the project," and that "[p]arties agree that they will make each other aware of any dialogue and conversations with groups about the *partnership* outlined in this letter of intent." (Emphasis added). This is insufficient to hold that the parties became a legal partnership subject to Ohio's Uniform Partnership Act.

In Ohio, "[a] partnership is an entity distinct from its partners," Ohio Rev. Code § 1776.21(A), and the term partnership "means an association of two or more persons to carry on as co-owners a business for-profit formed under [Ohio Rev. Code § 1776.22], a predecessor law, or a comparable law of another jurisdiction." § 1776.01(M). Ohio courts have noted that "every business relationship is unique, [so] no single fact or circumstance can operate as a conclusive test for the existence of a partnership." *In re Estate of Ivanchak*, 862 N.E.2d 151, 155 (Ohio Ct. App. 2006) (internal quotation marks omitted). They look to a number of factors, including: receipt by a person of a share of the business's profits; "the existence of a written or oral partnership agreement; the joint ownership and control of property; the ability of members to bind the business entity; and the nature of the tax returns filed by the business entity." *Id*.; *see also* Ohio Rev. Code § 1776.22(C) (providing "rules" for "determining whether a partnership is formed").

Here, the plain language of the 2014 LOI either wholly lacks many of these factors, or directly contradicts plaintiff's claim of partnership. For example, it requires the parties to discuss between themselves before engaging in any other potential opportunities. Additionally, it precludes the parties from binding each other in other matters, as the 2014 LOI "constitutes the entire agreement between the Parties," and "[n]o amendment or other modification to this Agreement shall be binding upon any Party unless executed in writing by all of the Parties hereto."

In other words, neither plaintiff nor defendants could unilaterally bind the alleged partnership to future agreements. Furthermore, the complaint and attached agreements fail to support or allege that the parties shared profit, jointly owned property, or filed taxes together as a partnership. Plaintiff's claim that the district court erred in failing to insert a remedy term exclusive to partnerships under Ohio law is without merit.

In sum, the district court did not err in holding that plaintiff's complaint failed to properly state a contract claim because the 2014 LOI was unenforceable.[2]

B.

The lack of an enforceable contract also thwarts plaintiff's good-faith claim pursuant to Ohio Revised Code § 1301.304. As the Ohio Court of Appeals has noted, that "statute does not create an independent cause of action for failure to perform or enforce a contract in good faith." *Padula v. Wagner*, 37 N.E.3d 799, 814 (Ohio Ct. App. 2015). "Instead, 'good faith is part of a contract claim and does not stand alone.'" *Id*. (quoting *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996)). And even if the 2014 LOI were valid, "Ohio law only recognizes an implied covenant of good faith and fair dealing in insurance contracts and in limited circumstances where the duty arises from the language of the contract." *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio Ct. App. 2008). Plaintiff failed to explain how the 2014 LOI, which is not an insurance contract, falls within a set of "*limited* circumstances where the duty arises from the language of the contract" sufficient to apply the implied covenant. *Id*. (emphasis added).

---

[2]Although we need not reach the issue to resolve this appeal, we also note that the district court found merit in defendants' argument that plaintiff contracted away its exclusive right to provide equity financing for the project. This argument presents an equally firm footing on which this court could affirm the district court's dismissal of plaintiff's complaint.

C.

Finally, the district court properly dismissed plaintiff's claims for preliminary injunction, appointment of a receiver, and action on accounting because they are not standalone causes of action, but merely equitable remedies that rely on a valid contract. On appeal, plaintiff fully acknowledges as much. Because we affirm the district court's ruling that plaintiff failed to state a claim on which relief could be granted on its contract claim, these remedies are not available to plaintiff. *See Anzalaco v. Graber*, 970 N.E.2d 1143, 1148 (Ohio Ct. App. 2012).

IV.

For these reasons, we affirm the judgment of the district court.