[Cite as *Figueroa v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-2268.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

WILMER FIGUEROA, ET AL.,      :

      Plaintiffs-Appellants,     :

      v.                       :

No. 110069

GREATER CLEVELAND REGIONAL
TRANSIT AUTHORITY,           :

      Defendant-Appellee.     :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 1, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910423

---

### *Appearances:*

Robert R. Lucarelli Co., L.P.A., and Robert R. Lucarelli,
*for appellants*.

Sheryl King Benford, General Counsel — Deputy General
Manager for Legal Affairs, and Keith A. Ganther, Acting
Deputy General Counsel — Litigation; Gallagher Sharp
L.L.P., Joseph W. Pappalardo, and Richard C.O. Rezie, *for
appellee*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiffs-appellants Wilmer Figueroa and Nancy Maro-Figueroa

(collectively "appellants") bring the instant appeal challenging the trial court's

granting of summary judgment on their claims for negligence and loss of consortium against appellee Greater Cleveland Regional Transit Authority ("GCRTA"). After a thorough review of the record and law, we reverse the decision of the trial court and remand for further proceedings.

## I. Factual and Procedural History

{¶ 2} Wilmer Figueroa ("Figueroa") was involved in a motor vehicle accident while riding his bicycle on Detroit Avenue near West 69th Street in Cleveland, Ohio.

{¶ 3} The underlying facts of the accident are as follows: in the area Figueroa was traveling on Detroit Avenue, the street contains a curb lane for parking, a bicycle lane, and a single lane for motor vehicle traffic. Figueroa claims that throughout his ride on Detroit Avenue, he was in the bicycle lane or the curb lane for parked cars.

{¶ 4} Also traveling down Detroit Avenue at the same time was a GCRTA paratransit bus driven by GCRTA employee Rodney Bennett ("Bennett"). He maintains that Figueroa was moving in and out of the bicycle lane up to the point where he was struck. Prior to the intersection of Detroit Avenue and West 69th Street, the bicycle lane merges into the single motor vehicle traffic lane.

{¶ 5} The GCRTA bus was equipped with a CCTV camera system that records activities inside and outside of the vehicle. The video captured several angles including in front of the bus, behind the bus, and along the passenger side of the bus. The video showed that, as Figueroa and the bus traveled along Detroit

Avenue, the bicycle lane was visible alongside the lane in which the bus was traveling. As Figueroa and the bus approached the intersection at West 70th Street, Figueroa can be seen riding in the curb parking lane. After the intersection, the bicycle lane begins to end and the solid line delineating the bicycle lane becomes a dashed line. When the lane ends, bicyclists are to merge with regular traffic.

{¶ 6} Just prior to the intersection of West 69th Street, Figueroa is seen colliding with the side of the bus. It appears that Figueroa, who was riding in the parking lane, attempted to merge into either the bicycle lane or regular traffic lane and then collided with the bus. The front camera of the bus shows that the dashed lines had just recently ended, demonstrating that the bicycle lane had merged with regular traffic. It is clear that the front of the bus had passed the end of the bicycle lane; however, the passenger side camera does not show whether the dashed lines were still present at the point of the collision.

{¶ 7} As a result of the accident, Figueroa sustained significant injuries to his right hip and incurred considerable medical expenses.

{¶ 8} Figueroa filed a complaint alleging negligence against GCRTA, and his wife, Nancy Maro-Figueroa alleged a claim for loss of consortium. GCRTA moved for summary judgment on appellants' claims, which the trial court granted.

{¶ 9} Appellants filed the instant appeal, raising two assignments of error for our review:

I. The trial court erred when it granted appellee's motion for summary judgment because the bicycle-bus accident that is the subject matter of

this personal injury action is rife with genuine and material issues of fact relating to negligence, comparative negligence, and/or causation.

II. The trial court erred when it denied appellants' motion to enforce the parties' agreement to conduct a trial on the issue of liability only with stipulated damages.

## II. Law and Analysis

{¶ 10} In their first assignment of error, appellants argue that the trial court erred in granting summary judgment on their claims of negligence and loss of consortium. "An appellate court reviews an appeal of the granting of summary judgment under a de novo standard of review." *Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610, ¶ 8 (8th Dist.). "Accordingly, it affords no deference to the trial court's decision and independently reviews the record to determine whether summary judgment is appropriate." *Id.* "Additionally, an appellate court recognizes that for purposes of deciding a motion for summary judgment, it is not the duty of the appellate court, or the trial court, to weigh the evidence or to resolve issues of credibility." *Id.*

{¶ 11} To succeed on a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of fact on an essential element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). If the moving party meets this burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact exists. *Id.*

{¶ 12} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to

judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); *Dresher* at 293. A fact is material if it "might affect the outcome of the suit under the governing law" of the case. *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶ 13} To determine whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744, Ohio courts conduct a three-tiered analysis:

> The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B) * * *.
>
> The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *
>
> If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

*Lyons v. Teamhealth Midwest Cleveland*, 8th Dist. Cuyahoga No. 96336, 2011-Ohio-5501, ¶ 23-25.

{¶ 14} As to the first tier, as set forth in R.C. 2744.02(A)(1), the general rule in Ohio is that political subdivisions are not liable for damages in civil actions:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of

the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

{¶ 15} There is no dispute that GCRTA is a political subdivision pursuant to R.C. 2744.01(F). Consequently, GCRTA is generally immune from liability for tort claims unless one of the five exceptions in R.C. 2744.02(B) applies.

{¶ 16} R.C. 2744.02(B)(1) provides an exception to the general grant of immunity for "injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." Under R.C. 2744.02(B)(2), a political subdivision is liable for "injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Pursuant to R.C. 2744.01(G)(2)(c), "proprietary function" specifically includes the "operation of a * * * busline or other transit company." There is no dispute that Bennett is a GCRTA employee who was acting within the scope of his employment and authority while operating the bus at the time of the accident.

{¶ 17} Actionable negligence requires a showing of a duty, a breach of that duty, and an injury proximately resulting from that breach of duty. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). The existence and conditions of a duty between two parties are determined by the nature of the relationship between them. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23. The duty element of negligence may be

established by common law, by legislative enactment or by the particular circumstances of a given case. *Schmitz v. NCAA*, 2016-Ohio-8041, 67 N.E.3d 852 ¶ 48 (8th Dist.), citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998).

{¶ 18} In its motion for summary judgment, GCRTA argued that it did not breach any duty of care owed to Figueroa because its driver had the right of way and that Figueroa's own negligence in violating R.C. 4511.55(A) was the proximate cause of his injuries. Further, GCRTA argues that the bus had the right of way and that Figueroa assumed the risk by attempting to merge where the bus was traveling. We need not address issues related to Figueroa's conduct yet because first we must assess whether any negligence occurred on the part of GCRTA.

{¶ 19} In support of its motion, GCRTA presented the deposition testimony of Figueroa, Bennett, the video taken from the bus, the police report from the accident, and the report of a bicycle expert. The police report contained the statements from two individuals who witnessed the accident, Sylvia Velez and Patrick Driscoll. In her statement, Ms. Velez stated that she observed a male on a bicycle "veer off to the left" outside of the bicycle lane, making contact with the bus. Further, Mr. Driscoll stated that he witnessed the bicyclist purposely run into the bus.

{¶ 20} We need not rely solely upon the eyewitness statements because the collision was captured by the CCTV camera system on the bus. However, while it is easy to see Figueroa collide with the bus on the side, it is unclear from the video

whether the bus was encroaching upon the bicycle lane. While it appears that the front of the bus had passed by the dashed lines signifying the end of the bicycle lane, it is impossible to tell from the video whether the collision occurred while the bicycle lane was still in effect or after the lane had merged into the regular traffic lane. We find that a genuine issue of material fact exists as to whether the bus was negligent in encroaching on the bicycle lane and causing the collision.

{¶ 21} Although the bus may have had the right of way in the regular lane of traffic, it would be negligent to also travel in the bicycle lane. GCRTA asserts that at the time of the accident, Bennett was operating the bus lawfully in the correct lane of travel, but it is impossible to tell this from the video. And while the witnesses stated that the bicyclist ran into the bus, the witnesses did not state whether the bus was staying within its proper lane of travel.

{¶ 22} Accordingly, genuine issues of material fact remain as to appellants' claims against GCRTA, and the trial court erred in granting summary judgment in favor of GCRTA. We need not address appellants' additional arguments regarding the expert opinion presented by GCRTA or opinion testimony presented by a GCRTA police officer. The video of the incident demonstrates the uncertainty as to what actually occurred in this matter. It is because of this uncertainty that summary judgment was improper.

{¶ 23} Appellants' first assignment of error is sustained.

{¶ 24} Appellants' second assignment of error argues that the trial court erred when it denied appellants' motion to enforce the parties' agreement to conduct a trial on the issue of liability only with stipulated damages.

{¶ 25} Appellants assert that during the original filing of this matter, *Wilmer Figueroa, et al., v. Greater Cleveland Regional Transit Auth.*, Cuyahoga C.P. No. CV-16-869009, the parties agreed to conduct a trial of the matter on the limited issues of negligence and comparative negligence. Appellants maintain that this agreement was confirmed through email messages between counsel and articulated in appellee's proposed jury instructions.

{¶ 26} GCRTA argues that appellants' second assignment of error is not properly before this court because appellants did not provide a transcript of the hearing on the motion to enforce even though a hearing was held on the motion where both sides presented arguments. Moreover, GCRTA contends that the alleged agreement between the parties came about in a previously filed action that was voluntarily dismissed by appellants and therefore it is a nullity. Finally, GCRTA maintains that any agreement was never consummated, lacked consideration, and violates R.C. 2744.05(B)(1) and (C)(1).

{¶ 27} It is well established that "'[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record.'" *In re Estate of Jenkins,* 8th Dist. Cuyahoga No. 107343, 2019-Ohio-2112, ¶ 20, quoting

*Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978).

{¶ 28} This principle is recognized in App.R. 9(B), which provides, in part, "'the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record * * *.'" *Try Auto Sales, Inc. v. Danal*, 8th Dist. Cuyahoga No. 95927, 2011-Ohio-3391, ¶ 8, quoting *Knapp* at 199. In the absence of a complete and adequate record, a reviewing court is required to presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's decision. *Burrell v. Kassicieh*, 128 Ohio App.3d 226, 714 N.E.2d 442 (3d Dist.1998).

{¶ 29} Absent a transcript of the testimony from the hearing on the motion to enforce, this court must defer to the trial court's findings and judgment. *See J. Norman Stark Co., L.P.A. v. Dahl*, 8th Dist. Cuyahoga No. 77857, 2000 Ohio App. LEXIS 4895 (Oct. 19, 2000). Consequently, this court cannot address the merits of appellant's second assignment of error and must presume the validity of the trial court proceedings. Appellants' second assignment of error is overruled.

### III. Conclusion

{¶ 30} The trial court erred in granting summary judgment in favor of GCRTA because genuine issues of material fact remain as to whether the driver of the GCRTA bus was negligent. The trial court did not err in denying appellants' motion to enforce the parties' agreement to conduct a trial on the issue of liability

only with stipulated damages.  Accordingly, appellants' first assignment of error is sustained, and their second assignment of error is overruled.

{¶ 31} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellants recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, P.J., and
EMANUELLA D. GROVES, J., CONCUR